## McCLELLAN v. BEATTY, ET AL.

[No. 17,187. Filed April 7, 1944. Rehearing denied June 15, 1944. Transfer denied October 11, 1944. Petition to Reconsider Transfer Dismissed November 24, 1944.]

174

*Roscoe D. Wheat,* of Portland; *Jacob N. Lennington* and *Leonidas A. Guthrie,* both of Muncie, and *Hammond, Buschman, Roll & Alexander,* all of Indianapolis, for appellant.

*Paul Brown,* of Newcastle, and *Sol H. Esarey* and *Andrew Jacobs,* both of Indianapolis, for appellees.

DRAPER, J.—Action in ejectment by appellant. Complaint in usual form. Answer in general denial. Finding and judgment for appellees. Appellant assigns error in overruling his motion for new trial, which questions the sufficiency of the evidence and asserts that the decision is contrary to law.

The evidence discloses that on July 15, 1935, the Merchants National Bank of Muncie, then owner, executed with one Rose Tobin a written contract for the sale, on a monthly basis, of a two-story and basement building in the City of Muncie. Later the bank furnished funds for extensive alterations to suit a new tenant for the ground floor of the building and to cover this item the first contract was superceded by another, which being insufficient for the purpose, was itself superceded by another dated January 20, 1938, and calling for the payment of a purchase price of $7500. On October 19, 1938, Rose Tobin assigned all her "right, title and interest" in the contract to the appellant, he paying her $1,467.33 therefor and taking it subject to the unpaid balance. On November 12, 1938, the bank, upon receiving the full balance from appellant, deeded the real estate to him and he filed this action the same day.

Appellee Beatty, as Receiver, had been in possession of the building prior to the execution of the first contract in July 1935, but came into possession of it personally at that time. At and prior to the execution of the first contract he agreed verbally with Mrs. Tobin that she was to make the down payment and keep up the monthly payments, and he was to pay taxes and keep up the building. It was agreed that he would reimburse her for her outlays as soon as he was able to do so, and thereupon receive from her the title to the building, and he is indebted to her for the amounts which she advanced. The contracts with the bank were executed in her name without fraudulent intent, and for the sole purpose of securing her against loss and she had no actual interest in the building except to protect her advancements. Prior to the assignment of the contract Beatty had advanced about $3500 for repairs, taxes, upkeep and insurance, and Mrs. Tobin had made the down payment

of $1500, and had invested about $1000 additional in the project. Since the execution of the first contract and until the execution of the assignment Mrs. Tobin had, and much of the time occupied, an apartment on the second floor of the building. Under his agreement with Mrs. Tobin, Beatty has at all times occupied the basement portion of the building without any obligation to pay rent therefor. The contract conferred upon the buyer the right to the possession of the property pending default.

When appellant took the deed he had actual knowledge of the occupancy of the basement by Beatty and before the assignment was executed Mrs. Tobin told him that Beatty had improved the property, had "done everything there that has been done," and should be considered in the transaction, but appellant told her to "forget it." Beatty neither knew of nor acquiesced in the transactions between Mrs. Tobin and the appellant, or in the execution of the deed by the bank.

The contract assigned provides that "The buyer shall not transfer or assign this contract . . . without the seller's written consent" and the appellees insist that the contract, requiring as it did the execution of a warranty deed by one of the contracting parties, could not be assigned. But this provision against assignment was inserted for the protection of the seller, and its acceptance from the assignee of the balance due it under the contract, and its execution of a warranty deed to him pursuant to the terms thereof, amounted to a recognition of the validity of the assignment and a waiver of its right to prevent one.

It is appellant's theory that the arrangement between Beatty and Mrs. Tobin was a parol contract for the pur-

chase of real estate, as such was within the inhibition of the statute of frauds, and that no facts exist which would remove the case from its operation. If the arrangement amounted to an oral agreement whereby Mrs. Tobin agreed to purchase the property and resell it to Beatty, who agreed to purchase it from her for the amount she had invested in it, and she thereupon purchased it for that purpose with her own money, we should be forced to agree, but the evidence most favorable to Beatty does not present the transaction in that light. The evidence discloses that it was agreed before the purchase that the moneys advanced by Mrs. Tobin would constitute a loan from her to Beatty, she to take title as security for its repayment, and he becoming indebted to her for the amounts advanced and to be advanced, and obligated to her for their repayment.

Despite the provisions of § 56-606, Burns' 1933, where it appears that by agreement and without any fraudulent intent the party to whom the conveyance is made, or in whom the title shall vest, is to hold the land or some interest therein in trust for the party paying the purchase money, or some part thereof, a resulting trust will arise. § 56-608 Burns' 1933. Under the circumstances of this case, the money advanced by Mrs. Tobin, though paid directly to the vendor, must be considered the money of Beatty, and a trust resulted in his favor. *Scott on Trusts*, Vol. 3, § 448; *4 Pomeroy's Equity Jurisprudence*, 5th Ed. § 1037. *Holliday* v. *Perry* (1906), 38 Ind. App. 588, 78 N. E. 877. Such agreements are not within the statute of frauds, and may be proved by oral evidence. *Marcilliat* v. *Marcilliat* (1890), 125 Ind. 472, 25 N. E. 597.

But the appellant contends that no resulting trust could arise here because the evidence fails to show an

absolute conveyance to Mrs. Tobin, and he says that the trust estate can only vest in the cestui que trust at the instant that the legal estate vests in the trustee. This raises the question as to whether, under our statutes, a trust can result to the one furnishing the purchase money under this kind of an agreement where the interest taken by the trustee is not the legal title, but is one acquired under contract of purchase, or in other words, whether this contract is a conveyance within the purview of § 56-608, Burns' 1933. We think it is, and that any other rule would be entirely too narrow, and would frequently result in great injustice.

The vendee under an executory contract for the sale of land, becomes the equitable owner thereof. *Kimberlin* v. *Templeton* (1913), 55 Ind. App. 155, 102 N. E. 160. The word "conveyance" has been variously defined in the reported cases, and it would serve no good purpose to review those decisions here. We are of the opinion that the word as used in the section of the statute last above referred to, includes any transfer of title, legal or equitable, and embraces an executory contract for the sale of real estate; that the word "title" includes equitable title, and the words "absolute conveyance" refer not to the taking of a fee simple absolute, but to the taking of a conveyance absolute in the sense that on its face it inures only to the benefit of the alienee.

We have been cited to no case in the Supreme Court or in this court which we consider to be in opposition to the rule above announced. Expressions in our cases to the effect that the trust estate must vest in the cestui que trust at the same instant of time that the legal estate vests in the trustee have been largely in connection with the proposition that a resulting trust cannot be created by funds subsequently furnished without an antecedent obligation to do so, and the expression has been used in

cases where the facts disclosed a transfer of the legal title, and so the courts have naturally referred to the transfer of the legal title in applying the rule.

It is recognized that a resulting trust must arise at or before the time of the conveyance and cannot be created by funds subsequently furnished, *Kemp v. Elder* (1930), 91 Ind. App. 65, 170 N. E. 90, but this rule is satisfied by the assumption of an absolute obligation to pay, which is incurred as a part of the original transaction of purchase. *Rickes* v. *Rickes* (1924), 81 Ind. App. 533, 141 N. E. 486. Pomeroy's Equity Jur., 5th Ed., Vol. 4, § 1037. It seems passing strange that Mrs. Tobin would enter into an arrangement under which she might continue for a long time to make monthly payments under a promise of repayment by Beatty which, while absolute, was so indefinite as to time. The obligation was, however, secured, and there is no conflict in the evidence that such an arrangement was actually agreed upon and entered into. As said in the case of *Rickes* v. *Rickes, supra,* at p. 540, "The agreement thus made is not as formal, or as well evidenced, as would have been advisable, but it is none the less effective, as no particular form of words, or character of evidence is essential."

Some light upon the nature of the arrangement may be shed by the fact that there is some evidence in the record of an intention at one time existing between Mrs. Tobin and Beatty to marry. It further appears that upon the happening of that event it was her desire to give him the building "with certain arrangements." However, her mere intention to make him a gift of the building if and after they married, with or without "certain arrangements," could not affect the agreement which she had made with him.

One who takes property with notice of a resulting trust takes subject to it. *Scott on Trusts*, Vol. 3, § 408. *Pomeroy's Equity Jur.*, 5th Ed., Vol. 4, § 1043. ▮ Appellant's knowledge of the actual occupancy by Beatty of the basement portion of the building, coupled with the information he received from Mrs. Tobin, was sufficient to put him upon inquiry as to Beatty's rights, and he is chargeable with all the knowledge that a reasonable inquiry would have imparted, *Smith* v. *Schweigerer* (1891), 129 Ind. 363, 28 N. E. 696; *Mishawaka St. Joseph L. & T. Co.* v. *Neu, Gdn.* (1936), 209 Ind. 433, 196 N. E. 85, including the fact that Beatty was entitled to the possession of the building. It was incumbent upon the appellant to prove his right to the immediate possession of the real estate, and he having failed to do so the judgment of the court below must be affirmed. No appellee other than Beatty asserts any interest in or right to the premises involved and the situation as it pertains to them has therefore not been discussed.

Judgment affirmed.

Note.—Reported in 53 N. E. (2d) 1013.

## On Petition for Rehearing.

Draper, P. J.—The appellant in his petition for rehearing insists that this case is governed by *Rucker* v. *Steelman* (1881), 73 Ind. 396, to which case our attention had not previously been directed.

In that case a somewhat similar situation was presented by the pleadings, but the court seems to have more or less arbitrarily considered the verbal ▮ agreements pleaded to have been contracts for the purchase and sale of lands. The court applies the rule, which was fully recognized and was not vio-

lated in our original opinion, that where "A" purchases real estate from "B" with his own funds under a verbal agreement with "C" to later convey the real estate to "C" upon payment of the price, the contract is within the statute and unenforcible. In our opinion it is not applicable to the facts in the case at bar.

Petition for rehearing overruled.

NOTE.—Reported in 55 N. E. (2d) 327.